NEWMEYER & DILLION LLP
BENJAMIN P PUGH, CBN 202025
*Benjamin.Pugh@ndlf.com*
MICHELLE D. BRUNSON, CBN 335103
*Michelle.Brunson@ndlf.com*
895 Dove Street, Second Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiff, GOATPIX LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOATPIX LLC,  a Nevada limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>THE UPPER DECK COMPANY,  a Nevada corporation; SPORT CARD CO., LLC, a Delaware limited liability company f/k/a The Upper Deck Company, LLC; UD CARD CO., a California corporation f/k/a The Upper Deck company; UPPER DECK SALES AND DISTRIBUTION COMPANY, LLC,  a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>          Defendant. | Case No. 3:21-cv-01815-TWR-JLB<br><br>**PLAINTIFF GOATPIX LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    March 21, 2024<br>Time:    2:00 pm<br>Crtrm.: 3A<br><br>Judge:          Honorable Todd W. Robinson<br><br>Magistrate:    Honorable Jill L. Burkhardt<br><br>Complaint Filed:    October 25, 2021<br>Final Pretrial Conf.: May 30, 2024 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................ 1

STATEMENT OF FACTS ............................................................... 4

LEGAL ARGUMENT ...................................................................... 8

I.    PLAINTIFF'S INFRINGEMENT CLAIMS ARE PROPERLY
      BEFORE THE COURT. ........................................................... 8

      A.    The Court has Subject-matter Jurisdiction to Adjudicate
            Plaintiff's Infringement Claims. ........................................ 8

      B.    Goatpix Has a Valid Certificate of Copyright Registration. ............ 9

            (1)    *DMI Conveyed the Copyright to Goatpix before June
                   11, 2014.* ......................................................... 9

            (2)    GOATPIX Would Have a Valid Registration
                   Notwithstanding Any Inaccuracies in the Application
                   because of the Safe Harbor Provision. ............................... 11

II.   THE DISCOVERY RULE APPLIES TO GOATPIX'S CLAIMS. ............ 13

III.  GOATPIX MAY SUE ON CLAIMS THAT ACCRUED PRIOR TO
      ITS OWNERSHIP OF THE JDI. ................................................. 16

      A.    Copyright Owners Can Transfer The Right To Sue For
            Accrued Claims. .............................................................. 16

      B.    Mr. Smith Transferred To DMI (Which Subsequently
            Transferred To Goatpix) The Right To Sue For Infringement
            Claims That Accrued Prior To The Transfer Of The JDI
            Copyright. ..................................................................... 17

      C.    Defendants' Reliance On *Silvers* and *ABKCO* Is Misplaced. ...... 21

IV.   COMPETING INTERESTS WEIGH IN FAVOR OF DENYING A
      STAY OF THESE PROCEEDINGS. ............................................ 24

CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

**Federal Cases**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020) ........................................................................ 10

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
   944 F.2d 971 (2nd Cir. 1991) ...........................................20, 21, 22, 23, 24

*Arthur Rutenberg Homes*,
   29 F.3d 1529 (11th Cir. 1994) ........................................................ 3, 10, 13

*BMG Rights Mgmt. (US) LLC v. Glob. Eagle Entm't Inc.*,
   2019 WL 4544424 (C.D. Cal. Aug. 20, 2019) ............................................. 4

*California Sansome Co. v. U.S. Gypsum*,
   55 F.3d 1402 (9th Cir. 1995) ..................................................................... 14

Co-opportunities, Inc. v. National Broadcasting Co., Inc.*,*
   *510 F.Supp. 43 (N.D.Cal.1981)* .................................................................. 24

*Crunchyroll, Inc. v. Pledge*,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ........................................... 23

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
   697 F.2d 27 (2d Cir. 1982) ................................................................. 10, 20

*Epikhin v. Game Insight N. Am.*,
   145 F.Supp.3d 896 (N.D. Cal. 2015) ..................................................... 9, 13

*Fisher v. United Feature Syndicate, Inc.*,
   37 F.Supp.2d 1213 (D. Colo. 1999) .......................................................... 20

*Free Speech Systems, LLC*,
   390 F.Supp.3d .............................................................................. 4, 15, 16

*Giddings v. Vision House Prod., Inc.,*
   *584 F.Supp.2d 1222 (D.Ariz.2008)* ........................................................... 24

*Hutson v. Notorious B.I.G., LLC*,
  2015 WL 9450623 (S.D.N.Y. Dec. 22, 2015).............................................. 19

*Intimo, Inc. v. Briefly Stated, Inc.*,
  948 F.Supp. 315 (S.D.N.Y. 1996) ............................................................. 20

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ............................................................... 9, 13

*Kuhmstedt v. Enttech Media Group, LLC*,
  2022 WL 1769126 (C.D. Cal. Apr. 11, 2022)........................................ 14, 16

*Kunkel*,
  420 F. App'x ............................................................................................... 13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).................................................................................... 24

*Magnuson v. Video Yesteryear*,
  85 F.3d 1424 (9th Cir. 1996) ..................................................................... 20

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
  345 F.Supp.3d 482 (S.D.N.Y. 2018) .......................................................... 14

*National Photo Group, LLC v. Allvoices, Inc.*,
  2014 WL 280391....................................................................... 4, 17, 18, 24

*Nat'l Council of Young Israel, Inc. v. Feit Co., Inc.*,
  347 F.Supp. 1293 (S.D.N.Y. 1972) ............................................................ 19

*Nealy v. Warner Chappell Music, Inc.*,
  60 F.4th 1325 (11th Cir. 2023) ............................................................... 2, 24

*Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*,
  832 F.Supp. 1378 (C.D. Cal. 1993)............................................................ 18

*Parisienne v. Scripps Media Inc.*,
  2021 WL 3668084 (S.D.N.Y. Aug. 17, 2021)............................................. 14

*Pincay v. Andrews*,
  238 F.3d 1106 (9th Cir. 2001) ................................................................... 14

*Pryor v. Jean*,
  2013 WL 12129950 (C.D. Cal. Oct. 28, 2013)....................................... 9, 13

*Radio Television Espanola S.A. v. New World Entertainment, Ltd.*,
  183 F.3d 922 (9th Cir. 1999) ...................................................... 4, 5, 10, 17

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)........................................................................... 8, 9

*Righthaven, LLC v. Majorwager.com, Inc.*,
  2010 WL 4386499 (D. Nev. Oct. 28, 2010) ......................................... 21, 22

*Roberts*,
  877 F.3d.............................................................................................. 12

*SAPC, Inc. v. Lotus Development Corp.*,
  699 F.Supp. 1009 (D. Mass. 1988) .................................................. 17, 19

*Silvers v. Sony Pictures Entertainment, Inc.*,
  402 F.3d 881 (9th Cir. 2005) .................................................. 21, 22, 23, 24

*Sohm v. Scholastic Inc.*,
  959 F.3d 39 (2d Cir. 2020) ..................................................................... 2

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*,
  39 F.4th 1236 (9th Cir. 2022) ........................................2, 13, 14, 19, 24, 25

*Starz*,
  510 F.Supp.3d ......................................................................................... 15

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd*,
  2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) ...................................... 9, 13

*Torres-Negron v. J & N Recs., LLC*,
  504 F.3d 151 (1st Cir. 2007) ................................................................. 9, 13

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,
  595 U.S. 178 ("Unicolors I") ................................................................. 11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022) .......................................................... 11, 12

*Valente–Kritzer Video v. Pinckney*,
  881 F.2d 772 (9th Cir.1989) ................................................................. 3, 10

*Warner Chappell Music v. Sherman Nealy*,
  No. 22-1078, 2023 WL 6319656 (U.S. Sept. 29, 2023) ............................ 25

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
   531 F.3d 38 (1st Cir. 2008) .................................................................. 14, 15

**Federal Statutes**

17 U.S.C. § 106 ........................................................................... 21, 22

17 U.S.C. § 408(a) ............................................................................. 8

17 U.S.C. § 411(a) ............................................................................. 8

17 U.S.C. § 411(b) ....................................................................... 11, 12

17 U.S.C. § 411(b)(2) ........................................................................ 12

17 U.S.C. §§ 204(a) and 408(a) ......................................... 2, 3, 10, 11

28 U.S.C. §§ 1331, 1338 ..................................................................... 8

section 204 .................................................................................... 10

section 411 .................................................................................... 12

*§ 501(b)* ......................................................................................... 23

**Other Authorities**

H.R. REP. 110-617 ....................................................................... 11, 12

*Parisienne*,
   2021 WL 36680864 (Aug. 17, 2021) ............................................. 14

Patry on Copyright § 20:19 (2013) .................................................. 25

1

**INTRODUCTION**

2      Plaintiff GOATPIX LLC ("Goatpix") acquired the photography portfolio of

3   Bill Smith, the official team photographer of the NBA's Chicago Bulls for 50

4   years.  Ex. A (Smith Dep.) at 9:11-22, Ex. B (Manley Dep.) at Ex. 3 (DMI-

5   Smith Agreement).[1]  As the Bulls' team photographer, Mr. Smith took

6   thousands of photographs of Bulls and other NBA players, including the

7   greatest of all time, Michael Jordan.  Ex. A (Smith Dep.) at 9:11-22; 13:6-8.

8      One photograph Mr. Smith took remains the most iconic photograph of

9   Michael Jordan ever taken:  Michael Jordan flying in mid-air from the free

10   throw line to win the 1988 NBA All-Star Game Slam Dunk Contest.

11



12

13

14

15

16

17

18

19

20   Exh. A (Smith Dep.) 15:6-16:11; Second Amended Complaint ("SAC"), ECF.

21   No. 39, Exh. D.  Goatpix copyrighted this image as "mj_1002" (the Jordan

22   Dunk Image, or "JDI") effective as of June 11, 2021.  Ex. A (Smith Dep.) at

23   27:14-28:18; Ex. B (Manley Dep.) at Ex. 11.

24      Under Mr. Smith's contract with the Bulls, Mr. Smith retained all

25

26   [1] Unless otherwise indicated, and consistent with the format following the
moving papers, all citations to "Ex." refer to exhibits attached to the

27   Declaration of Benjamin P. Pugh ("Pugh Decl.").  Some of these referenced
exhibits include numerical exhibits to the primary exhibit.  E.g. Ex. B (Manley

28   Dep.), at Ex. 3 (DMI-Smith Agreement) at [pin cite].

1   intellectual property copyrights to all of his photographic images.  Ex. A (Smith
2   Dep.) at 27:14-28:18; Ex. B (Manley Dep.) at Ex. 3 (DMI-Smith Agreement) at
3   Ex. A (Smith-Bulls Agreement).  Defendants THE UPPER DECK COMPANY,
4   SPORT CARD CO., LLC, UD CARD CO., AND UPPER DECK SALES AND
5   DISTRIBUTION COMPANY, LLC (collectively, "Defendants") somehow
6   obtained an original projector slide of the JDI in the 1990s.  Ex. A (Smith
7   Dep.) at 64:23-68:11.  Without obtaining any right to use the JDI from Mr.
8   Smith, *Id.*, Defendants nonetheless exploited the JDI for decades, selling
9   numerous products, thousands of which were signed by Michael Jordan,
10  amounting to tens of millions of dollars in sales.  Defendants essentially
11  admits this decades-long copyright infringement.  *See*, *e.g.*, Defendants'
12  Memorandum of Points and Authorities ("Mot.") at 16:16-17:26.

13         Defendants seeks summary judgment on the following technical
14  arguments to avoid the consequences of its infringement:

15      (1) the written assignment to Goatpix of the copyright at issue is dated
16          three days after the copyright registration application, such that Goatpix
17          lacked standing to file the copyright application under 17 U.S.C. §§
18          204(a) and 408(a);

19      (2) Defendants' infringement was so blatant that Goatpix's lawsuit is barred
20          by the statute of limitations, or at a minimum Goatpix's damages are
21          limited to infringement occurring three years prior to the filing of the
22          lawsuit;[2] and

23  _____

24  [2] This argument is based on an anomalous lone decision from the Second
    District, *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020), contrary to
25  controlling Ninth Circuit law, *Starz Ent., LLC v. MGM Domestic Television
    Distribution, LLC*, 39 F.4th 1236, 1240 (9th Cir. 2022), heavily criticized by a
26  recent Eleventh Circuit decision, *Nealy v. Warner Chappell Music, Inc.*, 60
    F.4th 1325 (11th Cir. 2023), that resulted in the U.S. Supreme Court granting
27  certiorari, *Warner Chappell Music v. Sherman Nealy*, No. 22-1078, 2023 WL
    6319656, at *1 (U.S. Sept. 29, 2023) to resolve the circuit split.
28

1    (3) Mr. Smith's sale of "all of [his] right, title and interest" to the mj_1002

2        image, including all "rights under copyright," did not also transfer the

3        right to sue for any infringement that occurred prior to the sale.

4    As explained herein, none of these arguments has merit.

5        First, "[m]any courts have held that the requirements of 17 U.S.C. §

6    204(a) can be satisfied by an oral assignment later ratified or confirmed by a

7    written memorandum of the transfer."  *Arthur Rutenberg Homes,* 29 F.3d

8    1529, 1532 (11th Cir. 1994) (*Arthur Rutenberg Homes*) citing inter alia

9    *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772 (9th Cir.1989).  Here, the

10   initial purchaser of Bill Smith's "Bulls Collection" photography portfolio was

11   Dwight Manley, Inc., a corporation owned 100% by its principal, Dwight

12   Manley.  Declaration of Dwight Manley ("Manley Decl."), ¶ 3, Ex. B (Manley

13   Dep.) at Ex. 3 (DMI-Smith Agreement)  Mr. Manley then formed Goatpix

14   ("Goat" = "greatest of all time," "pix" = pictures) for the purpose of owning and

15   utilizing the copyrights to the Bulls Collection.  Mr. Manley formed Goatpix on

16   April 29, 2021, as a Nevada LLC.  Manley Decl., ¶ ¶ 3,6.  Mr. Manley's

17   decision to transfer the copyright to the Bulls Collection from Dwight Manley,

18   Inc. ("DMI") to Goatpix (a decision he made as the then-sole owner of both

19   entities) pre-dates the June 11, 2021 copyright application.  That "agreement"

20   between the two entities permits Goatpix to file a copyright application before

21   the written assignment confirming the transfer.  17 U.S.C. §§ 204(a).

22       Second, neither Mr. Smith nor Mr. Manley had any knowledge of

23   Defendants' infringement, nor any knowledge of any fact or event to put either

24   of them on inquiry notice, until after the sale of Bulls Collection to Mr. Manley

25   in or about May 2021.  Declaration of William Smith ("Smith Decl."), ¶ ¶ 4,5;

26   Manley Decl., ¶ 9; Ex. A (Smith Dep.) at 92:5-96:13, 101:16-19; Ex. B (Manley

27   Dep.) at 75:25-76:10, 76:22-77:12, 78:1-11, 86:12-87:1.  A copyright holder's

28   ignorance of the defendant's infringement will not be considered

NEWMEYER
DILLION

"unreasonable" unless and until there were certain facts known to the copyright holder sufficient to trigger an affirmative duty to make an inquiry. Mere open and notorious infringement, without such triggering event, does not begin the running of the statute of limitations. *Free Speech Systems, LLC*, 390 F.Supp.3d at 1170-71 (no inquiry notice despite plaintiff's photographs being available on defendant's public website) (*Free Speech*); *BMG Rights Mgmt. (US) LLC v. Glob. Eagle Entm't Inc.*, 2019 WL 4544424 at *4 (C.D. Cal. Aug. 20, 2019) (no inquiry notice despite plaintiff's executives flying on defendant's flights, on which infringing music playlists were available).

Third, there is no requirement that an assignment of "all right, title and interest" to a copyrighted image, including "rights under copyright," must expressly specify the right to sue for infringement occurring before the assignment. *National Photo Group, LLC v. Allvoices, Inc.*, 2014 WL 280391 at *3, quoting *Radio Television Espanola S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("*Radio Television*"). Rather, the broad language used in the DMI-Smith Agreement is effective to transfer the right to sue for Defendants' infringement prior to the sale, and all parties involved in the transfer have the same understanding. Smith Decl., ¶ 3; Manley Decl., ¶ 5.

## **STATEMENT OF FACTS**

Bill Smith was the team photographer for the NBA's Chicago Bulls for decades. Ex. A (Smith Dep.) at 9:11-17.1. Pursuant to his agreement with the Chicago Bulls, Smith retained ownership of all his photographic images, denoted the "Bulls Collection" in the March 31, 2021 Purchase and Sale Agreement. Ex. A (Smith Dep.) at 27:17-28:18, Ex. B (Manley Dep.) at Ex. 3 (DMI-Smith Agreement) at Ex. A (Smith-Bulls Agreement). Smith, as the photographer, is the author of the JDI. Ex. A (Smith Dep.) at 13:6-8.

Mr. Manley is the sole principal and one hundred percent (100%) owner

NEWMEYER DILLION

1   of DMI and has been since its formation on May 26, 1994.  Manley Decl., ¶ 3;

2   Ex. B (Manley Dep.) at 17:9-17, 49:16-22, Ex. 4 (Bill of Sale) at Paragraph B.

3   DMI purchased the Bulls Collection, including the JDI from Mr. Smith, via a

4   March 31, 2021 Purchase and Sale Agreement.  Exh. B (Manley Dep.) at

5   15:9-13, 17:23-18:2, Ex. 3 (DMI-Smith Agreement).

6         Under the DMI-Smith Agreement, Mr. Smith intended to sell and DMI

7   intended to purchase all of Mr. Smith's right, title, and interest in and to the

8   "Bulls Collection," as defined therein, including all right, title, and interest to

9   the JDI subject only to the limited reservation of rights expressed in section 4

10   of the agreement.  Manley Decl., ¶ 5; Smith Decl., ¶ 3; Ex. B (Manley Dep.) at

11   15:9-13, Ex.3 ("DMI-Smith Agreement").  Mr. Manley understood that the

12   DMI-Smith Agreement provided for no other reservation of rights.  Manley

13   Decl., ¶ 5.  The rights retained by Mr. Smith in the copyrights do not include

14   the right to sue for infringement claims that accrued prior to Mr. Smith's

15   transfer of the copyrights.  Ex. B (Manley Dep.) at Ex. 3 at Section 4.

16         Mr. Manley formed Goatpix on April 29, 2021, as a Nevada LLC, and

17   registered Goatpix with the California Secretary of State on May 6, 2021.

18   Manley Decl., ¶ 3.  Initially, Mr. Manley owned 100% of Goatpix, but

19   subsequently transferred 12% of the ownership interests to other individuals,

20   such that he is currently an eighty-eight percent (88%) owner.  *Id*.; Ex. B

21   (Manley Dep.) 46:11-48:20, 49:11-19.  Mr. Manley has continuously been the

22   Manager of Goatpix since its formation.  Manley Decl., ¶ 3.

23         Mr. Manley formed Goatpix for the express purpose of holding all rights,

24   title, and interests to the photography portfolio DMI purchased from Bill Smith

25   via the DMI-Smith Agreement.  Manley Decl., ¶ 4; Ex. B (Manley Dep.) at

26   49:11-15.  As the sole principal and owner of DMI, Mr. Manley intended for

27   DMI to transfer to Goatpix and for Goatpix to acquire all rights, title, and

28   interest in and to the Bulls Collection, including all right, title, and interest to

NEWMEYER
DILLION

the JDI, as though Goatpix had been the buyer in the DMI-Smith Agreement since Goatpix's formation on April 29, 2021.  Manley Decl., ¶ 6, Ex. B (Manley Dep.) at Ex. 4, Paragraph C.  Consistent with this intent, Mr. Manley hired law firm Rutan & Tucker to document the transfer of all rights, title, and interest to the Bulls Collection from DMI to Goatpix.  Manley Decl., ¶ 7.

Mr. Manley hired a separate attorney, Eric Ridley, to file the copyright registration for the JDI.  Manley Decl., ¶ 8; Ex. B (Manley Dep.) at 33:3-13,78:23-79:5.  Eric Ridley filed the copyright registration with the Register of Copyright on June 11, 2021.  Manley Decl., ¶ 8; Ex. B (Manley Dep.) at 124:17-19, Ex.11 .  A certificate of registration was issued to Plaintiff with an effective date of June 11, 2021.  Ex. B (Manley Dep.) at 124:17-19, Ex.11.

Well before Goatpix filed for copyright registration of the JDI on June 11, 2021, Mr. Manley had instructed Rutan & Tucker to prepare written documentation of DMI's transfer to Goatpix of all rights, title, and interest in and to the Bulls Collection, including all right, title, and interest to the JDI.  Manley Decl., ¶ 7.  On May 6, 2021, Mr. Manley received an email confirming that Rutan & Tucker was "putting together an assignment to the LLC of all rights and obligations under the purchase agreement." *Id at* ¶ 7, Ex. C.

At the time the copyright registration for the JDI was submitted on June 11, 2021, Mr. Manley believed that the information provided in the application was accurate and that Goatpix was the copyright owner who owned all of the exclusive rights in the work.  Manley Decl., ¶ 8.

In or about May 2021, after acquiring the Bulls Collection and providing payment of same, Mr. Manley contacted Defendants' about a potential collaboration.  Ex. B (Manley Dep.) at 76:23-24, 79:11-15.  He was motivated to visit Defendants' online store by the possibility of a collaboration, which lead him to discover that Defendants was using the JDI.  Ex. B (Manley Dep.) at 76:22 - 77:12.  Prior to Mr. Manley's discovery of the JDI on Defendants'

1    online store, he was unaware of any facts that ever informed, suggested, or

2    implied to him that Defendants were ever selling, reproducing, or distributing

3    the JDI.  Manley Decl., ¶ 9; Ex. B (Manley Dep.) at 75:25-76:10, 76:22-77:12,

4    78:1-11, 86:12-87:1.

5        After discovering the JDI on Defendants' online store, Mr. Manley

6    contacted Mr. Smith.  Ex. B (Manley Dep.) at 77:2-5.  Prior to the sale of the

7    Bulls Collection, Mr. Smith was never made aware of any facts that ever

8    informed, suggested, or implied to him that Defendants were ever selling,

9    reproducing, or distributing the JDI before the parties executed the DMI-Smith

10    Agreement.  Smith Decl., ¶ 4; Ex. A (Smith Dep.) at 92:5-96:13, 101:16-19.

11    Nor was Mr. Smith ever made aware of any event, series of events or facts

12    which might or could have given caused him believe or suspect that there had

13    or may have been infringement or potential infringement of my rights with

14    respect to the JDI and/or that the JDI image was in any way being used in an

15    unauthorized manner.  Smith Decl., ¶ 5; Ex. A (Smith Dep.) at 92:5-96:13,

16    101:16-19.

17        As a result of Mr. Manley's discovery of the JDI on Defendants' online

18    store and the events stemming from this discovery, Mr. Manley expanded the

19    scope of his search and discovered a "big universe" of Defendants' use of the

20    JDI spanning decades.  Ex. B (Manley Dep.) at 76:22 - 77:12, 86:12-16.  After

21    Mr. Manley's discovery, the scope Mr. Ridley's representation expanded.  Ex

22    B (Manley Dep.) at 77:20 - 78:22.  Mr. Ridley conducted further investigation

23    into possible infringement and provided assistance in enforcing Plaintiff's JDI

24    copyright.  Ex. B (Manley Dep.) at 78:14-22, 92:5-9.

25        Despite requests that Defendants take down the JDI, they declined to

26    do so.  Ex. B (Manley Dep.) at 77:5-6, 86:15-87:1. Plaintiff filed suit against

27    Defendants on October 25, 2021.  *See* SAC., ECF. No. 39.

28    / / /

NEWMEYER DILLION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LEGAL ARGUMENT

**I.  PLAINTIFF'S INFRINGEMENT CLAIMS ARE PROPERLY BEFORE THE COURT.**

Defendants contend the Court lacks subject matter jurisdiction because Goatpix did not own the JDI copyright at the time the copyright registration application was filed.  Defendants base this argument on the date the copyright application was submitted (June 11, 2021), which occurred three days before the formal written assignment of the copyright from DMI to Goatpix (June 14, 2021).  Whether the Court has subject-matter jurisdiction over Plaintiff's copyright infringement claims, and whether the JDI copyright was validly registered within the meaning of the Copyright Act, are two distinct questions.  For the reasons discussed herein, the answer to both is yes.

### A.  The Court has Subject-matter Jurisdiction to Adjudicate Plaintiff's Infringement Claims.

The Court has subject matter jurisdiction over copyright infringement actions.  28 U.S.C. §§ 1331, 1338.  As an initial matter, registration is not a condition of copyright protection.  17 U.S.C. § 408(a).  However, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  Importantly, the Supreme Court has interpreted 17 U.S.C. § 411(a) as imposing only a "prefiling condition," and expressly held the requirement is "*nonjurisdictional*, notwithstanding its prior jurisdictional treatment."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010) (*Reed*) (emphasis added).

Here, Plaintiff's JDI copyright is registered.  Ex. B (Manley Dep.) at Ex. 11.  However, given the express holding in *Reed* that district courts have subject matter jurisdiction over registered and unregistered works, the Court would have subject matter jurisdiction over Plaintiff's copyright infringement

NEWMEYER
DILLION

1  claims even if, *arguendo*, the registration were "invalid" or otherwise

2  unregistered.  *See Reed*, 559 U.S. at 169.

3  Defendants' reliance on *Torres-Negron v. J & N Recs., LLC*, 504 F.3d

4  151 (1st Cir. 2007) (*Torres*) is misplaced.  This case was decided before

5  *Reed* held that the prefiling registration requirement is nonjurisdictional.

6  *Reed*, 559 U.S. at 169 (2010).  With respect to *Kodadek v. MTV Networks,*

7  *Inc.*, 152 F.3d 1209 (9th Cir. 1998) (*Kodadek*), that case does not hold that

8  the court lacks subject matter jurisdiction without a copyright registration;

9  rather, it holds only that registration is a "prerequisite to a suit on copyright."

10  *Id.* at 1211.

11  As for Defendants' citations to post-*Reed* cases, neither *Epikhin v.*

12  *Game Insight N. Am.*, 145 F.Supp.3d 896 (N.D. Cal. 2015) (*Epikhin*), *Swift*

13  *Harvest USA, LLC v. Boley Int'l HK Ltd*, 2020 WL 7380148 (C.D. Cal. Sept.

14  22, 2020) (*Swift*), nor *Pryor v. Jean*, 2013 WL 12129950 (C.D. Cal. Oct. 28,

15  2013) (*Pryor*), hold that failing to register a copyright divests district courts of

16  subject matter jurisdiction.  *Epikhin* cites *Reed* and expressly acknowledges

17  that the registration requirement is nonjurisdictional.  *Epikhin*, 145 F. Supp. 3d

18  896 at 902.  *Swift* states only that registration is a "prerequisite" to suit, which

19  is consistent with the holding in *Reed* that the registration requirement is a

20  prefiling condition, not jurisdictional.  *Swift*, 2020 WL 7380148 at *9.

21  **B.**   **Goatpix Has a Valid Certificate of Copyright Registration.**

22  **(1)**   ***DMI Conveyed the Copyright to Goatpix before June 11,***

23  ***2014.***

24  As of June 11, 2021, Goatpix was authorized to submit the copyright

25  registration application as the claimant.  Section 204(a) of the Copyright Act

26  provides that "[c]opyright ownership may be transferred so long as there is an

27  instrument of conveyance, or a note or memorandum of the transfer, is in

28  writing and signed by the owner of the rights conveyed or such owner's duly

authorized agent."  In addition, "many courts have held that the requirements of 17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer."  (*Arthur Rutenberg Homes,* 29 F.3d 1529, 1532 (11th Cir. 1994),citing *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 34 (2d Cir. 1982) (*Eden*), superseded on other grounds by rule as stated in *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 69 (2d Cir. 2020).  Notably, "every court which has considered the issue has arrived at the same result," including the Ninth Circuit.  *Arthur Rutenberg Homes*, 29 F.3d 1529 at 1532;  *See e.g.*, *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772 (9th Cir.1989).)  The rationale underlying the interpretation that section 204 may be satisfied by an oral assignment confirmed later in writing is that:

> [S]ince the purpose of the provision is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses, the "note or memorandum of the transfer" need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's late execution of a writing which confirms the agreement.... In this case, in which the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third-party infringer to invoke this provision against the licensee.

*Eden*, 697 F.2d at 36.  With respect to the sufficiency of the writing, "[n]o magic words must be included in a document to satisfy § 204(a).  Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television*,183 F.3d at 927 (9th Cir. 1999).

Here, Mr. Manley transferred ownership of the JDI copyright through an assignment he decided himself, as the principal of the two entities involved (DMI and Goatpix), which instruction was documented in an email by DMI and Goatpix's authorized agent (their attorney) on May 6, 2021, and was later ratified and confirmed in writing by the Bill of Sale and Copyright Assignment ("Bill of Sale").  Ex. B (Manley Dep.) at Ex. 4.  Mr. Manley had the intention

NEWMEYER DILLION

and understanding to transfer all rights, title, and interest in and to the Bulls Collection, including all right, title, and interest to the JDI, from DMI to Goatpix, as of April 29, 2021, Goatpix's date of formation.  As a result, the registration was made by the owner of the copyright at the time of the June 11, 2021 application, and is therefore valid under 17 U.S.C. §§ 204(a) and 408(a).

> **(2)    GOATPIX Would Have a Valid Registration Notwithstanding Any Inaccuracies in the Application because of the Safe Harbor Provision.**

Should the Court somehow determine there was no agreement between DMI and Goatpix prior to executing the Bill of Sale, Goatpix nevertheless is the holder of a valid copyright registration pursuant to section 17 U.S.C. § 411(b)'s safe harbor provision, providing that a certificate of registration is valid "regardless of whether the certificate contains any inaccurate information" unless:

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

The Supreme Court in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P., 595 U.S. 178* ("*Unicolors I*") held that "lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration" in its decision to vacate and remand the case back to the Ninth Circuit.  *Id*. at 182.  An express purpose of the safe harbor provision was to "eliminat[e] loopholes that might prevent enforcement of otherwise validly registered copyrights."  H.R. REP. 110-617, 20; *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 187 (2022) (citing H.R. REP. 110-617).

On remand, the Ninth Circuit in *Unicolors, Inc. v. H&M Hennes &*

*Mauritz, L.P.*, 52 F.4th 1054 (9th Cir. 2022) ("*Unicolors II*"), the court held:

> [A] party seeking to invalidate a copyright registration under §
> 411(b) must demonstrate that (1) the registrant submitted a
> registration application containing inaccuracies, (2) the registrant
> knew that the application failed to comply with the requisite legal
> requirements, and (3) the inaccuracies in question were material
> to the registration decision by the Register of Copyrights. Roberts,
> 877 F.3d at 1030. **Put differently, a registration is invalid under
> § 411(b) if the registrant perpetrated fraud on the Copyright
> Office by knowingly misrepresenting material facts.**

*Id*. at 1067 (emphasis added).  Interestingly, while Defendants allege that "[a] copyright lawsuit requires a valid registration of the work in accordance with the Copyright Act," (Mot. at 9:5), they fail to cite or address section 411 even though this is the statute which imposes the registration requirement and provides the safe harbor provision.

As the party seeking to invalidate a copyright registration, Defendants bear the burden of establishing Plaintiff is not entitled to the safe harbor. *Unicolors II*, 52 F.4th at 1067.  Defendants have failed to make a prima facie showing that they are entitled to judgment as a matter of law by failing to address 17 U.S.C. § 411.

Additionally, there has been no determination on the materiality of the inaccuracy.  "The scope of an inaccuracy's materiality is determined by making a statutorily mandated request of the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register ... to refuse registration.'" *Unicolors II*, 52 F.4th at 1064, citing 17 U.S.C. § 411(b)(2) and *Roberts v. Gordy*, 877 F.3d 1024, 1029 (11th Cir. 2017) (internal citation and quotation marks omitted).  Defendants now seek a result that would contravene the express purpose of the safe harbor provision by attempting to exploit a loophole to the enforcement of an otherwise validly issued registration.  H.R. REP. 110-617, 20.

None of the cases cited by Defendants address the applicability of the

NEWMEYER
DILLION

safe harbor provision.  As for *Kodadek*, *Torres-Negron*, and *Epikhin*, these cases do not involve inaccurate information contained on the registration certificate, but involve other registration requirements not at issue here. *Kodadek*, 152 F.3d at 1212; *Torres*-Negron,504 F.3d at 163 -164; *Epikhin*,145 F. Supp. 3d 896 AT 905.  As for *Swift*, the plaintiff failed to failed to file the required notice of copyright.  *Swift,* 2020 WL 7380148 at *9.  In *Kunkel*, and *Pryor*, the question surrounding ownership of the copyright involved two unrelated parties without common ownership, not, as here, entities with common ownership.  *Pryor*, 2013 WL 12129950 at *9, *Kunkel*, 420 F. App'x at 198–200.  Finally, as discussed above, *Arthur Rutenberg Homes* supports Plaintiff's position.  *Id*. at 1532.

Although Mr. Manley testified in his deposition that he had no intent to enter into further agreements between DMI and Goatpix, this is because the decision/agreement between DMI and Goatpix pre-dated the copyright registration, regardless of the date of the formal Bill of Sale.  If necessary, Mr. Manley as majority owner of both DMI and Goatpix can easily amend the Bill of Sale so that the Effective Date aligns with the parties' (i.e., his own) intent.

Finally, to the extent necessary, Goatpix should be permitted to amend its complaint to add DMI as a plaintiff, thereby eliminating this nonsubstantive issue in its entirety.

## II.    THE DISCOVERY RULE APPLIES TO GOATPIX'S CLAIMS.

Section 507(b) of the Copyright Act provides that infringement claims are timely if they are "commenced within three years after the claim accrued." A "cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."  *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1240 (9th Cir. 2022) (*Starz*).  Referred to as the "discovery rule," the "three-year clock begins upon discovery of the infringement."  *Id.* at 1242.  The Ninth Circuit

1   follows the discovery rule.  *Id.*

2       As an initial matter, a defendant "raising the statute of limitations as an

3   affirmative defense has the burden of proving the action is time barred."

4   *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).

5   Here, Defendants attempt to shift their burden to Goatpix.  Mot. at 15:7-9.

6   However, since the Ninth Circuit follows the "discovery rule" *Starz*, 39 F.4th at

7   1242, Goatpix is not required to prove a negative.  The term "accrued" is

8   defined as "when one has knowledge of a violation or is chargeable with such

9   knowledge." *Id.* at 1240.  Because Defendants offer no evidence

10   demonstrating Mr. Smith or Goatpix had actual or constructive knowledge of

11   Defendants' infringement, Defendants have not met their initial burden.

12       In order "[t]o dispute the date on which the claims accrued in copyright

13   cases, <u>a defendant</u> must produce evidence 'that would have been sufficient to

14   awaken inquiry.'" *Parisienne v. Scripps Media Inc.*, 2021 WL 3668084 at *3

15   (S.D.N.Y. Aug. 17, 2021) (*Parisienne*), quoting *Michael Grecco Prods., Inc. v.*

16   *Valuewalk, LLC*, 345 F.Supp.3d 482, 512 (S.D.N.Y. 2018) (emphasis added).

17   A plaintiff has constructive knowledge of copyright infringement if it "had

18   enough information to warrant an investigation which, if reasonably diligent,

19   would have led to discovery of the [claim.]" *Pincay v. Andrews*, 238 F.3d

20   1106, 1109 (9th Cir. 2001).  This is sometimes referred to as "inquiry notice"

21   or "storm warnings."  *See*, *e.g.*, *Parisienne*, 2021 WL 36680864 at *3 (Aug.

22   17, 2021).  "Typically, inquiry notice must be triggered by some event or

23   series of events that comes to the attention of the aggrieved party." *Warren*

24   *Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38,44-45 (1st Cir. 2008)

25   (brackets and internal citations omitted) (*Warren*).  Regarding when a plaintiff

26   is chargeable with such knowledge, the copyright holder's duty of diligence "is

27   not some boundless duty to monitor every possible outlet for infringement at

28   all times . . . ." *Kuhmstedt v. Enttech Media Group, LLC*, 2022 WL 1769126

NEWMEYER
DILLION

at *4 (C.D. Cal. Apr. 11, 2022) (*Khumstedt*), citing *Starz*, 510 F.Supp.3d at 878.

Here, there is no evidence Mr. Smith or Mr. Manley had actual or constructive notice of Defendants' infringement more than three years prior to the date Goatpix filed this action.  Defendants fail to identify any fact that would support an argument that Mr. Smith was on constructive notice, but instead proceed directly to evaluating whether Goatpix or Mr. Smiths' efforts to investigate possible unknown and unsuspected infringement were reasonable.  There are no facts indicating Mr. Smith discovered any evidence of Defendants' infringement prior to the sale of the Bulls Collection on March 31, 2021, nor are there any facts that indicate he was aware of anything that would have led him to suspect Defendants' infringement.  Smith Decl., ¶ ¶ 4-5; Ex. A (Smith Dep.) at 92:5-96:13, 101:16-19.  Defendants have provided no evidence that Mr. Smith had a reason or "storm warning" to inquire into Defendants' infringement.  Goatpix was only able to find infringing products after Mr. Manley became aware of such "storm warnings," which caused him to further inquire into Defendants' long-running copyright infringement.  Ex. B (Manley Dep.) at 76:22 - 77:12 78:14-22, 86:12-16, 92:5-9.  This is precisely how the discovery rule is intended to operate.

With respect to Defendants' argument that Goatpix could have "easily discovered the allegedly infringing products" (Mot. at 6:28-7:1), this argument is similarly unavailing.  First, that Mr. Smith and Goatpix now know of the infringement and where to search on the Internet is not evidence either was put on notice with respect to actual or potential infringement at any time prior. *Free Speech Systems, LLC*, 390 F.Supp.3d at 1170.  Moreover, Defendants' assertion that Mr. Smith was required to perform such Internet sleuthing without any triggering event places an affirmative duty on him to police the Internet without any "storm warning," where no such duty exists. *Warren*, 531

F.3d 38 at 44-45, *Khumstedt*, 2022 WL 1769126 at *4.  This is particularly nonsensical because (1) it would have required Mr. Smith to use relatively new technology late in his career to perform a reverse image search on the Internet in order to locate an image that was created in 1988, and (2) neither Mr. Smith nor Goatpix had any reason to believe an original slide of the JDI was in Defendants' possession.  Smith Decl., ¶ 4-5; Ex. A (Smith Dep.) at 9:11-22, 92:5-96:13, 101:16-19; Manley Decl., ¶ 9; Ex. B (Manley Dep.) at 75:25-76:10, 76:22-77:12, 78:1-11, 86:12-87:1.

Finally, to the extent the Court finds there was some event triggering inquiry notice, the reasonableness of Mr. Smith's and Goatpix's search efforts remains a question of disputed fact not suitable for determination on summary judgment.  "[R]easonableness of discovering copyright infringement is generally a question of fact."  *Free Speech*, 390 F. Supp. 3d at.  As for whether Mr. Smith acted unreasonably because he did not utilize the alleged technological advances discussed by Defendants' expert, this is also a disputed material fact in which *Free Speech* is instructive.  In that case, the court held that a material fact dispute existed where Defendant alleged that the use of Google reverse imaging would have uncovered the infringing products and plaintiff's failure to do so was unreasonable.  *Id*. at 1169-71.

## III.   GOATPIX MAY SUE ON CLAIMS THAT ACCRUED PRIOR TO ITS OWNERSHIP OF THE JDI.

Defendants contend that "Goatpix cannot recover for claims predating its June 14, 2021 ownership of the JDI . . . ."  Mot. at 20:23-24.  Defendants' argument fails for several reasons.

### A.   Copyright Owners Can Transfer The Right To Sue For Accrued Claims.

Copyright owners unequivocally can transfer the right to sue for copyright infringement claims that accrued before the date such copyright

owners transferred the copyright itself.  *SAPC, Inc. v. Lotus Development Corp.*, 699 F.Supp. 1009, 1012 (D. Mass. 1988) (*SAPC*); *National Photo Group, LLC v. Allvoices, Inc.*, 2014 WL 280391 at *3 (N.D. Cal. Jan. 24, 2014) (*National Photo*).

**B.    Mr. Smith Transferred To DMI (Which Subsequently Transferred To Goatpix) The Right To Sue For Infringement Claims That Accrued Prior To The Transfer Of The JDI Copyright.**

The facts before the Court demonstrate Mr. Smith transferred to DMI, who then transferred to Goatpix, all "right, title and interest" to the JDI, including "rights under copyright," which broad language includes the right to sue for copyright infringement claims that accrued, or unknown infringement that occurred, before the date Mr. Smith transferred the copyright.  Smith Decl., ¶ 3; Manley Decl., ¶ 5; Ex. B (Manley Dep.) at 15:9-13, Ex.3 (DMI-Smith Agreement).  Indeed, the limited rights Mr. Smith retained in the copyrights do not include the right to sue for infringement claims that accrued prior to Mr. Smith's transfer of the copyrights.  Ex. B (Manley Dep.) at 15:9-13, Ex.3.  There are no facts before the Court indicating Mr. Smith retained or intended to retain the right to sue for copyright infringement claims of the JDI that accrued before the date Mr. Smith transferred the JDI to DMI.

Defendants appear to contend that Mr. Smith and DMI were required to insert into the DMI-Smith Agreement a set of "magic words" reflecting their mutual intent and understanding that the rights Mr. Smith transferred to DMI specifically included the right to sue for accrued infringement claims.  No such requirement exists, and the Ninth Circuit has expressly rejected this view.  "[T]he Ninth Circuit has directed that '[n]o magic words' need to be used in the assignment and that the parties' intent as evidenced in the writing should control . . . ."  *National Photo*, 2014 WL 280391 at *3, quoting *Radio*

1     *Television*,183 F.3d at 927.

2       Rather, the determination of whether a transfer of a copyright conveys
3 the right to sue for causes of action that accrued prior to the transfer depends
4 on the particular circumstances of the assignment. *Parfums Givenchy, Inc. v.*
5 *C & C Beauty Sales, Inc.*, 832 F.Supp. 1378, 1384 (C.D. Cal. 1993) (*Parfums*
6 *Givenchy*).  In *Parfums Givenchy*, the assignor transferred to the assignee
7 "'all right, title, and interest' in the United States copyright for the" product at
8 issue.  *Id.*  Based, in part, on this transfer language, *Parfums Givenchy*
9 concluded that "it would be unreasonable to conclude that [the assignor] had
10 reserved to itself causes of action accruing" before it obtained the copyright at
11 issue.  *Id.  Parfums Givenchy* noted that its conclusion was buttressed by "a
12 declaration submitted by [the assignee] in support of its motion [for summary
13 judgment,]" which "states that [the assignor] intended to and did transfer to
14 [the assignee] the right to pursue claims for infringement of the United States
15 copyright in the [product] accruing before the time of the assignment." *Id.*
16 Taking all circumstances into consideration, including the transfer contract
17 language and the assignee's declaration, "the Court is satisfied that [the
18 assignee] is the assignee of not only the [product] copyright but also the right
19 to sue on claims previously accrued by the assignor." *Id.*

20       The DMI-Smith Agreement contains language substantially similar to
21 the language in the copyright transfer agreement in *Parfums Givenchy*, which
22 that court concluded effectively transferred the right to sue for accrued claims.
23 *Id.*; Ex. B (Manley Dep.) at Ex. 3.  Other courts likewise have concluded
24 parties to a transfer of copyright interests effectively transferred the right to
25 sue for accrued claims based upon contract language substantially similar to
26 the language in the DMI-Smith Agreement.  *See*, *e.g.*, *National Photo*, 2014
27 WL 280391 at *3 (parties transferred right to sue for accrued claims where
28 transfer stated, "[f]or clarification, while this Assignment is dated April 5, 2012,

NEWMEYER
DILLION

the Assignment is effective, and all transfers reference[d] in this Agreement were made for each of the Works as of the date each was registered with the United States Copyright Office"); see also *Nat'l Council of Young Israel, Inc. v. Feit Co., Inc.*, 347 F.Supp. 1293, 1295 n.3 (S.D.N.Y. 1972) (holding that "comprehensive and unrestricted conveyance" of a company's property was sufficient to include the existing causes of action for infringement of copyright, even though the assignment did not expressly mention accrued causes of action); *see also SAPC*, 699 F.Supp. at 1012 (where prior copyright owner transferred "copyrights", without express reference to an accrued cause of action, court held that, based on this contract language alone, "the Asset Purchase Agreement unambiguously assigns not only the [transferee] copyrights but also any then existing claims for infringement"); *see also Hutson v. Notorious B.I.G.*, LLC, 2015 WL 9450623 at *7 (S.D.N.Y. Dec. 22, 2015) (despite lack of express language assigning right to sue for accrued claims, agreement deemed to convey "the exclusive right to pursue causes of action for past infringement" because "otherwise [it] would render the [] Agreement meaningless").

The discovery rule for accrual of a copyright-infringement claim allows copyright holders to recover damages for all infringing acts that occurred before they knew or reasonably should have known of the infringing incidents, and the three-year limitations period runs from the date the claim accrued, i.e., from the date when the copyright holder knew or should have known of the infringement. *Starz*, 39 F.4th at 1240-41 ("a claim for copyright infringement may accrue when the copyright owner discovers, or reasonably should have discovered, the infringement"); *see id.* at 1242 ("'[t]he overwhelming majority of courts' today use the discovery rule for determining accrual in copyright cases"). Accordingly, claims stemming from Defendants' infringement prior to March 31, 2021 had not yet accrued because, under the

discovery rule, Mr. Smith did not know and should not reasonably have known of such claims at the time he transferred the JDI.[3]

Finally, there is no dispute between Mr. Smith and Goatpix regarding who owns the right to sue Defendants for their infringement of the JDI copyright prior to March 31, 2021. The Court should not permit Defendants, infringing third parties, to step in and re-interpret an agreement between Mr. Smith and DMI to which Defendants were not a party, in a self-serving manner that absolves them of decades of copyright infringement. The Ninth Circuit has rejected similar attempts by infringing third parties in disputes about whether a copyright itself has been transferred. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996) ("[W]here 'the copyright holder appears to have no dispute with its licensee on [the matter of ownership], it would be anomalous to permit a third party infringer to invoke this provision against the licensee'" (quoting *Eden Toys*, 697 F.2d at 36).[4]

_____

[3] For this reason, *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2nd Cir. 1991) is factually distinguishable. In that case, the court found that the "claims had already accrued when ABKCO purchased" the copyrights. *ABKCO*, 944 F.2d at 981. Here, there is no evidence that any claims against Defendants accrued prior to the date DMI or Goatpix acquired the copyrights to the JDI because there is no evidence Mr. Smith knew or should have known of such claims.

[4] To the extent the Court does not conclude the DMI-Smith Agreement transferred to DMI (and subsequently Goatpix) the right to sue for claims that accrued prior to its acquisition of the copyrights in the JDI, any such deficiency could be remedied by joining Mr. Smith as a plaintiff or by Mr. Smith and DMI and Goatpix executing an agreement clarifying Mr. Smith intended to transfer and DMI and Goatpix intended to acquire the right to sue for any copyright infringement claims that accrued prior to the date of transfer. Courts permit parties to cure procedural deficiencies in this way. *See*, *e.g.*, *Fisher v. United Feature Syndicate, Inc.*, 37 F.Supp.2d 1213, 1217 (D. Colo. 1999); *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F.Supp. 315, 318-19 (S.D.N.Y. 1996) (amendment to transfer of copyright clarifying transfer of right to sue for

### C.   Defendants' Reliance On *Silvers* and *ABKCO* Is Misplaced.

Defendants' reliance on *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (en banc) (*Silvers*), *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2nd Cir. 1991) (*ABKCO*), and *Righthaven, LLC v. Majorwager.com, Inc.*, 2010 WL 4386499 (D. Nev. Oct. 28, 2010) is misplaced.

First, the legal issue in *Silvers* is distinguishable, "[m]ay an assignee who holds an accrued claim for copyright infringement, but who has no legal or beneficial interest in the copyright itself, institute an action for infringement?"  *Id.* at 883.  In other words, the question *Silvers* addressed was whether a plaintiff who does not have any of the exclusive rights enumerated in 17 U.S.C. § 106, including, critically, ownership of the subject copyright, may nevertheless maintain a copyright infringement cause of action.  *Id.* at 883-84.  That is not the issue Defendants present in this case, in which it is undisputed that Plaintiff owns the JDI copyright.  Ex. B (Manley Dep.) at 17:23-18:2, 49:10, Ex. 3 ("DMI-Smith Agreement"), Ex. 4 ("Bill of Sale".

Second, *Silvers* and *ABKCO* are factually distinguishable.  In *ABKCO* the appellant and appellee were adverse parties to a settlement agreement resulting from contentious and protracted litigation over revenue from a George Harrison song.  *Id.* at 974-77.  The appellant asserted that it had the right to take part in the settlement because the settlement distributed funds for infringement claims that accrued while the appellant owned the copyright.  *Id.*

accrued claims effective to defeat challenge to plaintiff's right to pursue pre-transfer infringement claims because defendant was on notice of scope of claimed infringement, defendant conducted discovery on the claimed infringement, prior owner intended to transfer such claims, prior owner did not intend to pursue such claims, and permitting such claims to proceed served judicial economy).

1   The relevant issue in *ABKCO* was whether the appellant was entitled to

2   participate in the settlement by virtue of the fact that it owned the copyright at

3   issue when the infringement claims accrued.  *Id.* at 981-82.  In other words,

4   the only party to the copyright transfer agreement at issue in *ABKCO* was the

5   owner of the copyright at the time the claims accrued (i.e., the appellant),

6   which asserted it did not transfer the right to sue on such previously accrued

7   claims.  *Id.* at 980-81.  *ABKCO* held that the appellant had a right to

8   participate in the settlement and receive funds because it owned the

9   infringement claims that accrued during the time the appellant owned the

10  copyright.  *Id.*

11        Here, by contrast, no party (i.e., neither Mr. Smith nor DMI or Goatpix)

12  to the DMI-Smith Agreement or Bill of Sale contends DMI or Goatpix did not

13  receive the right to sue and recover for infringement claims accruing before

14  the time of the sale.  In other words, unlike in *ABKCO*, Defendants have

15  produced no evidence that any party to the copyright transfers believes DMI

16  or Goatpix did not acquire the right to sue for claims that arose, or unknown

17  infringement that occurred, before March 31, 2021.

18        In *Silvers*, the plaintiff was not the original owner of the copyright at

19  issue, was not the owner of the copyright at the time of litigation, and never

20  was the owner of the copyright at any time prior to or during the litigation.

21  *Silvers*, 402 F.3d at 883-85 (third party "was the original owner of the

22  copyright . . . and remains so today").  Rather, the plaintiff in *Silvers* merely

23  obtained an assignment of "any claims and causes of action against" the

24  defendant, but not (and never) any interest in the copyright itself.  *Id.*

25        The central holding in *Silvers* is that 17 U.S.C. §§ 106 and 501 codify

26  Congress's intent that those who have never owned a copyright do not have

27  the right to sue for infringement upon such copyright, even if such chose in

28  action is attempted to be assigned to that non-owner.  "[A]n assignee who

NEWMEYER
DILLION

holds an accrued claim for copyright infringement, but who has no legal or beneficial interest in the copyright itself, [may not] institute an action for infringement."  *Silvers*, 402 F.3d at 883; *see also id.* at 885-86 ("[n]on-owners claiming a bare right to sue . . . are not entitled to notice or joinder, which suggests that Congress did not envision . . . that the right to sue was a right severable from ownership . . . . only owners of an exclusive right in the copyright could bring suit" (emphasis in original)).

*Silvers* makes clear it does not address the question of whether accrued claims of infringement, or only prospective claims of infringement, may be transferred along with ownership of the copyright itself, when it states:

> [i]t is not entirely clear whether the copyright holder in Eden Toys had granted to Eden the right to sue on accrued causes of action, as is the case here, or only the right to sue prospectively.  Whether the assignment was prospective or retrospective, however, the court made plain the basic principle, which we also have derived from § 501(b) and its context and history, that only the owner of an exclusive right under the copyright is entitled to sue for infringement.

*Silvers,* 402 F.3d at 889 (emphasis in original).  In other words, *Silvers* expressly states that the distinction between the assignability of already accrued, or only prospective, infringement claims was irrelevant for purposes of resolving the factual and legal issues presented.  *See also Crunchyroll, Inc. v. Pledge* 2014 WL 1347492 at *13 (N.D. Cal. Mar. 31, 2014) ("in *Silvers*, the Ninth Circuit held that 'the bare assignment of an accrued cause of action is impermissible under 17 U.S.C. § 501(b)").

Here, Goatpix is the legal and beneficial owner of the JDI copyright, which Defendants do not dispute.  Manley Decl.,¶ ¶ 4-8; Ex. B (Manley Dep.) at Exs. 4, 11.  Accordingly, *Silvers* provides no support to Defendants' claim that Goatpix cannot sue Defendants for claims that accrued prior to Goatpix acquisition of the JDI copyright.

Moreover, *Silvers* does not endorse the holding in *ABKCO*, 944 F.2d at

NEWMEYER DILLION

981, regarding the alleged need for a express language singling out an assignment of accrued infringement claims.  *National Photo* addressed a similar argument based upon *Silvers* and found:

> [w]hile Defendant cites an opinion from the Second Circuit Court of Appeals for the proposition that "if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them," *ABKCO Music, Inc.*, 944 F.2d at 980, **this rule has not been adopted by the Ninth Circuit and no district court in this Circuit that has cited the rule has explained why it should exist**.  *See, e.g., Co-opportunities, Inc. v. National Broadcasting Co., Inc.*, 510 F.Supp. 43, 46 (N.D.Cal.1981); *Giddings v. Vision House Prod., Inc.*, 584 F.Supp.2d 1222, 1229 (D.Ariz.2008).  The Court disagrees with Defendant that the Ninth Circuit in *Silvers* endorsed *ABKCO* 's particular holding regarding an express assignment of accrued claims.  The *Silvers* court, in concluding that an accrued cause of action cannot be assigned without also assigning an ownership interest in the copyright itself, simply followed *ABKCO* 's separate holding that a party with no ownership interest has no standing to sue.  402 F.3d at 890. *Silvers* made no mention of whether an assignment of accrued rights must be express.

*National Photo*, 2014 WL 280391 at *3 (emphasis added).  Accordingly, the Court should not interpret *Silvers* as requiring "express" singled-out language particularly specifying the right to sue for accrued infringement claims.

## IV.   <u>COMPETING INTERESTS WEIGH IN FAVOR OF DENYING A STAY OF THESE PROCEEDINGS.</u>

Goatpix acknowledges the Court's inherent authority to stay proceedings where an important legal issue is pending before the Supreme Court, but the Court should refrain from doing so here.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

In this case, the competing interests weight in favor of denying a stay because the Ninth Circuit has made it abundantly clear the discovery rule applies to copyright infringement claims.  *Id.* at 254–55 (whether to grant a stay requires the court to exercise "sound judgment" and weigh "competing interests."); *Starz*, 39 F.4th 1236.  Defendants rely on the fact that the Supreme Court recently granted a writ of certiorari in *Nealy v. Warner*

NEWMEYER DILLION

*Chappell Music, Inc.*, 60 F.4th 1325 (11th Cir. 2023) to address whether relief was barred "under the discovery accrual rule applied by circuit courts and the Copyright Act's statute of limitations."  *Warner Chappell Music v. Sherman Nealy*, No. 22-1078, 2023 WL 6319656, at *1 (U.S. Sept. 29, 2023).  The reality, however, is that the circuit split involves an outlier decision made in the Second Circuit that goes against every other circuit, including the Ninth Circuit, that has taken up the issue.  Currently, "[t]he overwhelming majority of courts" today use the discovery rule for determining accrual in copyright cases.  *See* 6 William F. Patry, Patry on Copyright § 20:19 (2013) (collecting cases); see also *Starz*, 39 F.4th at 1242.

In addition, fact discovery is closed, and since the initial filing of this motion the scheduling order was amended to extend pre-trial deadlines.  Currently, the final pre-trial conference is set for May 30, 2024.  Given that oral argument in *Nealy* is set for February 24, 2024, and the proximity to the Supreme Court's summer recess, a decision would be anticipated before any date set for trial, allowing the parties to make any necessary adjustments in the unlikely event the Supreme Court sides with the Second Circuit.  As such, the competing factors weigh in favor of proceeding with the pending litigation, and Plaintiff respectfully requests the Court deny Defendants' alternative request for a stay.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary Judgment should be denied in its entirety.

Dated:  January 25, 2024          NEWMEYER & DILLION LLP


By:     */s/ Benjamin P. Pugh*
Benjamin P. Pugh
Michelle D. Brunson
Attorneys for Plaintiff, GOATPIX LLC